UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Protective Life Insurance Company,<br><br>                             Plaintiff,<br><br>                   vs.<br><br>Deborah LeClaire, an individual, and<br>Carrie Thomas, Administratrix on<br>Behalf of the Estate of Robert Eugene<br>Gilliland, Deceased,<br><br>                            Defendants. | Civil Action No.: 7:17-cv-00628-AMQ<br><br><br><br><br><br>**OPINION AND ORDER** |

      Before this Court is Defendant Carrie Thomas, Administratrix on Behalf of the Estate of Robert Eugene Gilliland, Deceased's ("Thomas") Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings (ECF No. 33), Defendant Deborah LeClaire's ("LeClaire") Amended Motion for Summary Judgment (ECF No. 35), Defendant Thomas's Motion to Strike from Defendant LeClaire's Second Affidavit on Summary Judgment Motion (ECF No. 42) and LeClaire's Motion to Amend her Answer, Counterclaim, and Cross Claim. (ECF No. 43.) The Court held a hearing on these motions on May 31, 2018, and has considered the arguments of the parties, as well as the briefing submitted and the entire record in this case. For the reasons set forth herein, this Court DENIES Thomas's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings, DENIES LeClaire's Amended Motion for Summary Judgment, DENIES Thomas's Motion to Strike and DENIES LeClaire's Motion to Amend without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

      The motions before the Court arise out of an interpleader action brought pursuant to 28

U.S.C. §§ 1335 (a) and 2361, and based on diversity of citizenship and the assertion of adverse claims to the death benefit of a life insurance policy that is in excess of $500. (ECF No. 1.) As alleged in the complaint, on or about November 26, 2001, Protective Life Insurance Company ("Protective") issued a term life insurance policy (No. DT0084888) (the "Policy") to Robert Gilliland (the "Insured" or the "Decedent") in the face amount of $200,000 (the "Death Benefit"). (ECF No. 1 at ¶ 7.) An amendment to the application was incorporated and made a part of the Policy and listed the Insured's then wife, LeClaire, as primary beneficiary of the Policy proceeds. (ECF No. 1 at ¶ 7.) The Insured and LeClaire were married on December 2, 2000, but separated and later divorced on August 20, 2003. (ECF No. 1 at ¶ 8.) In 2013, the South Carolina Legislature amended Title 62, Article 2, Part 5 of the South Carolina Code such that the divorce or annulment of marriage revokes any revocable disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing document, except as provided by the express terms of a governing instrument. S.C. Code Ann. § 62-2-507(c). (ECF No. 1 at ¶ 9.) The Insured died on July 18, 2016. (ECF No. 1 at ¶ 10.) LeClaire, the named beneficiary in the Policy, and Thomas, the Administratrix of the Estate have asserted competing claims to the Death Benefit. Thus, Protective sought to deposit the Death Benefit from the Policy with the Clerk of Court so that the defendants could resolve their rights to the Policy before this Court. (ECF No. 1 at ¶¶ 11, 14, 20-22.) This Court previous granted Protective Life's motion for interpleader deposit (ECF No. 20) and for release of funds (ECF No. 23 in accordance with the relevant statutes.

Thomas filed her Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings on January 26, 2018 (ECF No. 33); LeClaire filed her Amended Motion for Summary Judgment on the same day. (ECF No. 35.) Thomas moved to strike several assertions of

2

LeClaire's Second Affidavit in Support of her Motion for Summary Judgment on February 22, 2018. (ECF No. 42.) On February 26, 2018, LeClaire filed her Motion to Amend her Answer, Counterclaim, and Cross Claim was filed on February 26, 2018. (ECF No. 43.) Replies and responses have been filed and the motions are ripe for review.

## STANDARDS OF REVIEW

### Summary Judgment

A court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate.

Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). At the summary judgment stage, the judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, No. 17-1503, 2018 WL 1916320, at *3 (4th Cir. Apr. 24, 2018)(internal citation and quotation marks omitted).

**Motion for Judgment on the Pleadings**

A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6). *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Such a motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal citation and quotations omitted). The Court must treat as true all well-pleaded allegations as true and construe them in the light most favorable to the pleading part. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "A judgment on the pleadings is only warranted if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*, 122 F. Supp. 3d 448, 450 (D.S.C. 2015) (internal citation and quotation omitted).

**Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Wright & Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

**Motion to Amend Complaint**

"Generally, motions to amend a pleading are governed by Rule 15(a) of the Federal Rules of Civil Procedure." *Jones v. Luthi*, 586 F. Supp. 2d 595, 611 (D.S.C. 2008). Ordinarily, "the court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a). However, "after the deadlines provided by a scheduling order have passed, the good cause standard [of Rule 16] must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). The movant must first establish it has "good cause" for the amendment under Fed. R. Civ. P. 16(b). *See Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997). If the movant satisfies this initial step, "it must then pass the requirements for amendment under Rule 15(a)." *Id.*; *see Vercon Construction, Inc. v. Highland Mortgage Co.*, 187 Fed. Appx. 264, 2006 WL 1747115, at *1 (4th Cir. June 20, 2006) (unpublished) ("Ordinarily, leave to amend is to be 'freely given when justice so requires.' However, when granting leave to amend, as was the case here, would require modifying the district court's scheduling order, Federal Rule of Civil Procedure 16(b) requires that the movant must first show good cause.").

## ANALYSIS

An interpleader action involves two steps or stages. S*ee Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F.Supp.2d 714, 717 (D.Md. 2009). During the first stage, the Court must determine if interpleader is proper and will direct that funds plus interest be deposited with the Clerk. *See Wells Fargo Bank, N.A. v. Eastham*, No. CV DKC 16-0386, 2016 WL 2625281, at *2–3 (D. Md. May 9, 2016). During the second stage, a scheduling order is issued and the case continues between the claimants as to their respective rights. *Id*.; *see also Leventis v. First Nat'l Ins. Co. of Am.*, No. 3:09–1561–JFA, 2010 WL 2595305, at *2 (D.S.C. June 23, 2010). "[T]he court determines the respective rights of the claimants to the fund or property at stake via normal

litigation processes, including pleading, discovery, motions, and trial." *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). The second stage is "ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake." *NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 375 (3d Cir. 1995). If there is no genuine issue of material fact, this stage of the matter may be resolved by summary judgment. *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284–85 (S.D. Fla. 2007). If the material facts are disputed, each claimant must prove its right to the fund by a preponderance of the evidence. *Id.* at 1285. The Court determines the rights of the parties and priority of claims as they existed at the time the interpleader action was commenced.

With these initial concepts in view, the Court turns to the substantive motions. The first question presented is whether S.C. Code Ann. § 62-2-507 (c)(1)(i) was intended to apply "retroactively." (ECF No. 33 at 3.) The statute provides:

> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
> (1) revokes any revocable:
> (i) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument…

S.C. Code Ann. § 62-2-507.

The Editors' Notes reflect the following Reporter's Comments: "The 2013 amendment expands this section to cover life insurance and retirement plan beneficiary designations, transfer on death accounts, and other revocable dispositions to the former spouse that the divorced individual established before the divorce or annulment. This section effectuates a decedent's presumed intent: without a contrary indication by the decedent, a former spouse will not receive any probate or nonprobate transfer as a result of the decedent's death." *Id.*

6

The 2013 Act provided the effective date of January 1, 2014. The initial question before the Court is whether the statutory provision can apply in the instant action in light of the time frames associated with the Insured's death and the referenced divorce. As noted above, the Insured and LeClaire divorced on August 20, 2003. The Insured died on July 18, 2016, and this action was brought on March 7, 2017. Concerning the South Carolina Probate Code, Act No. 100 of 2013, Section 4 provides as follows in relevant part: "SECTION 4. (A) This act [amending Articles 1, 2, 3, 4, 6, and 7] takes effect on January 1, 2014. (B) Except as otherwise provided in this act, on the effective date of this act: (1) this act applies to any estates of decedents dying thereafter and to all trusts created before, on, or after its effective date; (2) the act applies to all judicial proceedings concerning estates of decedents and trusts commenced on or after its effective date…." S.C. Code Ann. tit. 62, art. 2. In her motion for judgment on the pleadings, Thomas argues that the statute should apply retroactively and that doing so does not violate the constitutional prohibition against impairment of contracts. (ECF No. 33 at 3.) LeClaire does not respond directly to this motion, but files a motion for summary judgment arguing that, inter alia, the statute does not apply.

"The cardinal rule of statutory construction is a court must ascertain and give effect to the intent of the legislature." *State v. Elwell*, 403 S.C. 606, 612, 743 S.E.2d 802, 806 (2013) (quoting *State v. Scott*, 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002)). What the legislature says in the text of the statute is considered the best evidence of the legislative intent. *Id.* It is also proper for the Court to consider "the title or caption of an act in aid of construction to show the intent of the legislature.'" *Rhame v. Charleston Cty. Sch. Dist.*, 412 S.C. 273, 276–77, 772 S.E.2d 159, 161 (2015) (quoting *Lindsay v. S. Farm Bureau Cas. Ins. Co.*, 258 S.C. 272, 277, 188 S.E.2d 374, 376 (1972)). "In the construction of statutes there is a presumption that statutory enactments are

7

to be considered prospective rather than retrospective in their operation unless the intention to make them retrospective is clearly apparent from the terms thereof." *Neel v. Shealy*, 261 S.C. 266, 273, 199 S.E.2d 542, 545 (1973). Finally, "[a] statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Georgia-Carolina Bail Bonds, Inc. v. Cty. of Aiken*, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct. App. 2003). Once the Legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy. *S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 20, 382 S.E.2d 11, 14 (Ct. App. 1989).

In this Court's view, the statute and the associated legislative notes shows that the South Carolina Legislature intended for a divorce or annulment to revoke the disposition or appointment of property, including beneficiary interests to a former spouse, unless expressly provided otherwise. The statute applies to all judicial proceedings concerning estates of decedents and trusts commenced on or after the effective date of January 1, 2014. As the Decedent passed away after the effective date, the instant matter must be considered within the purview of the statute.[1]

LeClaire also makes the argument that "retroactive" application of the amendment to S.C. Code Ann. § 62-2-507 to the Policy would impair the obligations of the contracts between LeClaire and Protective Life in violation of the Contracts Clauses of the state and federal constitutions. ECF No. 35-5 at 14.) The Court has considered this position thoroughly, but is not persuaded to grant summary judgment in favor of LeClaire on this ground. On June 11, 2018, the Supreme Court of the United States decided *Sveen v. Melin* and addressed this question

---

[1] Factually and procedurally, the case *State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497 (D.S.C. 2017), cited in briefing by both parties which involved claims made by an ex-spouse beneficiary against third-party defendants in an interpleader action does not address the issue presented in the instant matter.

squarely in an opinion in an interpleader action between an ex-wife and children concerning policy proceeds. That opinion specifically referenced South Carolina as one of 26 states having adopted a "revocation-on-divorce" law substantially similar to the one at issue in that case. *Sveen v. Melin*, --S.Ct.--- 2018, 2018 WL 2767640, *3 (2018). In that case, the Supreme Court "resolved a split of authority over whether the Contracts Clause prevents a revocation-on-divorce law from applying to a pre-existing agreement's beneficiary designation." *Id.* at * 5. The High Court concluded that such a statute does not substantially impair pre-existing contractual arrangements even where the designation under the policy was made before the statute was enacted. *Id.* at *3. The Court further found that such a law merely puts in place a presumption about what an insured wants after divorcing, which, as is the case here, may be changed by the insured with "the stroke of a pen." *Id.* at *7. This binding precedent controls and calls for the rejection of LeClaire's argument.

Additionally, the South Carolina Supreme Court applies the same standard for analyzing contract clause claims under the state constitution as federal courts apply to the Contract Clause under the federal constitution. *See S.C. Pub. Serv. Auth. v. Citizens & S. Nat'l Bank of S.C.*, 386 S.E.2d 775, 790 (S.C. 1989); *Sandlands C&D, LLC v. Cty. of Horry, a Political Subdivision of S.C.*, No. 4:09-CV-1363-TLW, 2013 WL 12137692, at *12 (D.S.C. Jan. 3, 2013). Thus, this Court concludes that there is no violation of the contract clause under the state constitution for the same reason there is no violation under the federal constitution as it relates to the potential application of S.C. Code § 62-2-507.

Having dispensed of the initial statutory issues raised by both parties' substantive motions, the Court addresses the central issue raised by LeClaire's pleadings—whether the life insurance designation in the Policy is irrevocable. This issue matters because S.C. Code Ann. §

9

62-2-507 by its express terms, would not apply to *irrevocable* beneficiary designations. LeClaire argues that she is a "co-owner" as well as the sole beneficiary under the Policy, and is therefore an "Irrevocable Beneficiary" entitled to the Policy proceeds as a matter of contract. (ECF No. 35-5 at 2.) In support of her position, LeClaire highlights that she signed the Protective Life "Pre-Authorization Withdrawal Agreement" which allowed her account to be automatically debited each month for the policy premium. She also maintains that on November 14, 2018, both she and the Decedent signed an "Amendment to Application Form" where LeClaire signed on a line designated for "Signature of Adult Applicant/Owner(s) (if other than insured)" (ECF No. 35-5 at 4-5.) LeClaire argues that she is therefore an "Irrevocable beneficiary," whose consent would be needed to change the beneficiary designation. (ECF No. 35-5 at 6.) In reply, Thomas notes, among other things, that under the Policy, a person must be expressly named as an irrevocable beneficiary to be considered as such, and maintains that LeClaire was not so named. (ECF No. 39 at 3.)

The Court has reviewed the Policy including the referenced Amendment to Application (ECF No. 35-2 at 14), and the definitions associated with the Policy. The Policy is considered a "legal contract between the Owner and the Company" and the entire contract "consists of the application (and any supplemental applications) and the policy, which includes any attached riders." (ECF No. 35-2 at 20.) The Owner is defined as "the person who owns the policy, as shown on the Company's records." (ECF No. 35-2 at 20.) The Policy contains a definition for a "beneficiary" and also states that "any beneficiary may be named an Irrevocable Beneficiary"… "one whose consent is needed to change the Beneficiary." (ECF No. 35-2 at 20.) Although LeClaire signed the Amendment to Application on the line marked designated for adult applicant/owner(s) if other than insured, the November 2001 application does not indicate any

other changes as to the beneficiary or policy other than an increase in premiums due to underwriting factors. (ECF No. 35-2 at 14.) The Policy acknowledges that a beneficiary may be named as an Irrevocable Beneficiary, but the documents on file do not reflect that such a specific designation was made.

At this stage of the litigation, the Court cannot conclude that either moving party is entitled to judgment as a matter of law in their favor. Several material facts are still in dispute regarding the designation of the deceased's beneficiary, the completion of the application and associated forms, signatures on the associated forms, and the parties' state of mind at the time the forms were completed. Proper administration of the insurance proceeds is, at this time, still indeterminate. *See Metro. Life Ins. Co. v. Van Dolsen*, No. CIV.A RDB-09-1534, 2010 WL 145884, at *2–3 (D. Md. Jan. 8, 2010)(denying motion for judgment on the pleadings and finding that factual disputes remained as to the beneficiary form in a dispute over life insurance benefits); *see also Equitable Life Assur. Soc. of the U.S. v. Jones*, 679 F.2d 356, 356–59 (4th Cir. 1982)(applying Maryland law, finding summary judgment precluded by the record, and remanding case for further exploration of the circumstances of the change of beneficiary in a dispute involving husband's first and second wives' respective claims to insurance proceeds).

## **CONCLUSION**

For the reasons set forth above, the Court DENIES Thomas's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings (ECF No. 33) and LeClaire's Amended Motion for Summary Judgment. (ECF No. 35.) The parties are directed to meet and confer regarding any remaining pretrial matters and confer readiness for trial. The parties should then submit a joint status report to the court regarding same. The Court will schedule a bench trial to

resolve this matter and will make factual and legal findings regarding the Policy and LeClaire's status as a beneficiary.

The Court DENIES Thomas's Motion to Strike several assertions set forth in LeClaire's affidavit in support of her motion for summary judgment. (ECF No. 42.) This Court has denied LeClaire's motion for summary judgment for the reasons set forth above and did not consider that affidavit in ruling on the Motion. Accordingly, the Motion is denied without prejudice at this time. As this Court will schedule this matter for a bench trial, it will resolve all evidentiary questions concerning admissibility of testimony and rule on objections or any evidentiary motion at that time.

The Court DENIES LeClaire's Motion to Amend her Answer, Counterclaim and Cross Claim. (ECF No. 43.) LeClaire did not file the Motion to Amend until after the December 29, 2017 deadline for submitting amendments per the scheduling order had passed. (ECF No. 30.) Thus, in order to demonstrate the Court should modify the scheduling order and allow the untimely amendment, LeClaire must establish good cause under Rule 16. The Motion makes little effort to establish good cause for the failure to submit the proposed amendment before the deadline, and does not address or acknowledge Rule 16 or the "good cause" standard. Thus, the Motion is denied without prejudice. Although the Court is not convinced that the intended amendments will make any material difference to the case, the Court will consider any requested amendment to the scheduling order to accommodate any purported new developments.

IT IS SO ORDERED.

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

July 2, 2018
Greenville, South Carolina