IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Protective Life Insurance Company, | ) | Case No. 7:17-cv-00628-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Deborah LeClaire, an individual, and | ) | |
| Carrie Thomas, Administratrix on | ) | |
| Behalf of the Estate of Robert Eugene | ) | |
| Gilliland, Deceased, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is an interpleader action involving competing claims to a $200,000 life insurance policy issued to Robert Gilliland, who died on July 8, 2016. At the time of his death, Gilliland had in force the aforementioned life insurance policy underwritten by Plaintiff, an insurance company organized pursuant to the laws of Tennessee with its principal place of business in Birmingham, Alabama. ECF No. 1.

Deborah LeClaire[1] was named as the beneficiary to the life insurance policy; however, Carrie Thomas, administratrix of Gilliland's estate, contests her right to the proceeds pursuant to S.C. Code Ann. § 62-2-507. Faced with competing claims to the policy, Plaintiff initiated this interpleader action, seeking permission to pay the policy

---

[1] LeClaire was previously Deborah Gilliland. For clarity, she will be referred to throughout this Order as Deborah LeClaire.

1

proceeds into the Court's Registry and be discharged. The Court granted the Motion and dismissed Plaintiff from the case. ECF No. 20.

A bench trial was held on January 7, 2019. ECF No. 65. Present at the hearing, were Thomas and LeClaire and no other witnesses. After receiving testimony, carefully considering the evidence, weighing the credibility of the witnesses, reviewing the exhibits and briefs, and studying the applicable law, this Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

LeClaire and Gilliland were married on December 2, 2000. ECF No. 1-2 at 3. On September 8, 2001, Robert Gilliland applied for a $200,000.00 life insurance policy from Plaintiff. ECF No. 35-2 at 4–7. The policy provides that if someone other than the insured person is to be an owner, she must be "named" as an owner in the policy schedule, an endorsement, or an amendment to application. *Id.* at 20. The application provides a space for a non-insured to be specifically named as an owner. *Id.* at 15. If someone other than the proposed insured in to be the owner, she is to be further identified by her social security number and her relationship to the insured. *Id.*

Also on September 8, 2001, LeClaire signed a "Pre-Authorization Withdrawal Agreement," regarding "Policy No. DT-0084888" for "Name of Insured Robert Gilliland," allowing Plaintiff to automatically debit her Bank of America checking account each month

for the policy premium. *Id.* at 9. Plaintiff's agent and LeClaire also signed a "Conditional Receipt Agreement" acknowledging that the agent had received the "Pre-Authorized Withdrawal Agreement" form for $139.50 per month on the policy. *Id.* at 8.

On November 14, 2001, Gilliland and LeClaire signed an "Amendment to Application" form regarding "Name of Insured Robert Gilliland – Policy DT0084888." *Id.* at 14. Gilliland signed on the line designated for "Signature of The Insured(s)," and LeClaire signed on the line designated for "Signature of Adult Applicant/Owner(s) (if other than Insured)." *Id.* This amendment does not provide her social security number or identify her relationship to the insured. The amendment further provides that "the changes shown above shall be an amendment to and form a part of the application and the policy." *Id.* The only change above that line is an increase in the premiums. *Id.* LeClaire signed the amendment below the space indicated for changes. *Id.*

Also on November 14, 2001, LeClaire executed a second "Pre-Authorization Withdrawal Agreement," authorizing Plaintiff to deduct $139.50 per month in premiums from her Sharonview Federal Credit Union checking account. *Id.* at 35. On November 26, 2001, Plaintiff issued the policy. *Id.* at 12. The policy identifies Robert Gilliland as owner on the declarations page. *Id.* The policy identifies LeClaire as the beneficiary. *Id.* at 15.

3

On January 28, 2002, a decree of separate maintenance and support with respect to Gilliland and LeClaire was issued by the Cherokee County Family Court.[2] ECF No. 1-2. The Family Court entered a divorce decree on August 20, 2003. ECF No. 1-3.

On April 15, 2003, LeClaire telephoned Plaintiff and requested a Transfer of Ownership form. ECF No. 46-1 at 1–2. The form was addressed to Gilliland and mailed to LeClaire's address. *Id.* at 3. Gilliland's signature was required to complete the form, but the form was never returned to Plaintiff. Plaintiff made periodic annual reports that were addressed to Gilliland and included "important policyowner notice[s]". *See, e.g.*, ECF No. 35-2 at 40. It was undisputed at trial that these notices were sent to LeClaire's address. It appears that LeClaire paid all premiums for the policy from November 2001 until Gilliland's death in July 2016.

## **CONCLUSIONS OF LAW**

Section 62-2-507 of the South Carolina Code was amended in 2013 and now provides that:

> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>
> (1) revokes any revocable:
>
> (i) disposition or appointment of property or beneficiary designation made by a divorced

---

[2] The Family Court order notes that LeClaire requested a decree of separate maintenance and support on November 13, 2001.

4

> individual to the divorced individual's former spouse in a governing instrument;

A "governing instrument" is defined as

> [A]n instrument executed by the divorced individual before the divorce or annulment of the individual's marriage to the individual's former spouse including, but not limited to wills, revocable inter vivos trusts, powers of attorney, life insurance beneficiary designations, annuity beneficiary designations, retirement plan beneficiary designations and transfer on death accounts.

S.C. Code Ann. § 62-2-507(a)(4).

By Order issued July 2, 2018, the Honorable A. Marvin Quattlebaum, District Judge for the District of South Carolina, found that the statute is applicable to the present action. ECF No. 51. Accordingly, the question to be resolved is whether LeClaire is an irrevocable beneficiary. The policy states that "An Irrevocable Beneficiary is one whose consent is needed to change the Beneficiary." ECF No. 35-2 at 20. LeClaire argues that because she was made a co-owner by the November 14, 2001, amendment, her consent was needed to change the beneficiary; accordingly, she contends that she is an irrevocable beneficiary. The Court disagrees.

"Insurance policies are subject to general rules of contract construction." *Sloan Constr. Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818, 819 (S.C. 1977). In construing a document such as the contract at issue in this case, it is well settled that the court is required to ascertain the intention of the parties from the four corners of the document. *See McPherson v. J.E. Sirrine & Co.*, 33 S.E.2d 501, 510 (S.C. 1945) ("'In construing and determining the effect of a written contract, the intention of the parties and

the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument.'" (quoting 17 C.J.S. *Contracts* § 296)).

The Court finds that it was not the intention of the parties that the November 14, 2001, amendment operate to add LeClaire as an owner of the policy in light of the fact that the parties separated on or before November 13, 2001, as evidenced by LeClaire's request for separate maintenance and support. Moreover, if it had been the parties' intention to add LeClaire as an owner, one or both would have raised the issue during the family court matter, specifically, on or before the decree of separate maintenance and support was entered on January 16, 2002, wherein the parties entered into an agreement as to marital property and debt. This conclusion is buttressed by the fact that the decree specifically provides for Gilliland's workers compensation settlement as a conditional payment source for LeClaire. *See* ECF No. 39-2 at 50–51. The Court concludes that Gilliland or LeClaire would have sought to have the policy used for the same purpose; however, Gilliland's failure to mention or inquire about the policy leads to the conclusion that he was not aware that the policy had been issued. It appears that LeClaire kept the policy's existence from him in that the initial policy and all subsequent communications were sent to her address and she took no action to advise him or change the address for the correspondence.

Further, pursuant to the plain language of the policy, Gilliland was the sole owner of the policy. LeClaire is not a co-owner and, therefore, is not an irrevocable beneficiary for purposes of S.C. Code Ann. § 62-2-507. Accordingly, her designation as beneficiary

6

was revoked. In the absence of a named beneficiary, the default beneficiary is the estate of Robert Gilliland.[3]

## ORDER AND CONCLUSION

For the foregoing reasons, the court hereby orders that the Clerk of this Court disburse from its Registry all funds deposited by Protective Life Insurance Company, together with accrued interest thereon, minus the Clerk's fee for handling the funds as authorized by the Judicial Conference of the United States and as set by the Director of the Administrative Office of the United States Courts, and minus the sum of $6,149.60 which has previously been dispersed to pay Plaintiff's reasonable attorneys' fees and costs, to the estate of Robert Gilliland.

The parties are hereby advised that any party wishing to appeal this court's decision must file a notice of appeal with the Clerk of this court within thirty days of the entry of this order. If an appeal is taken, that portion of this order authorizing the disbursement of funds shall be stayed until the disposition of the appeal.

IT IS SO ORDERED.

Donald C. Coggins, Jr.
United States District Judge

February 14, 2019
Spartanburg, South Carolina

---

[3] The Court also notes that LeClaire did not assert in her initial pleadings that the November 14, 2001, was intended to act as a change in ownership. See ECF No. 13.

7